UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:14-CR-00119-EJL |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| RANDY GARD TEALL | |
| Defendant. | |

Pending before the Court in the above-entitled matter are numerous pre-trial motions by Defendant Randy Gard Teall ("Defendant") including:  Motion to Strike Surplusage (Dkt. 21); Motion to Disclose Federal Rule of Evidence 404(b) and 609 Material (Dkt. 22); Motion in Limine Regarding Defendant's Prior Conviction (Dkt. 23); Motion to Dismiss Count One (Dkt. 24); Motion to Compel Grand Jury Transcripts (Dkt. 25); Motion to Sever Counts (Dkt. 26); and Motion for Fed. R. Crim. P. 17(c) Subpoena Duces Tecum (Dkt. 32).

In an effort to give the parties direction on the evidentiary issues that have been raised in the Motions, the Court will set forth its views on those matters and make rulings where possible based on the information presently before the Court.  These rulings are preliminary and may be subject to revision upon consideration of a particular evidentiary issue presented within the context of the trial.  Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs

1

and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

## Background

Defendant has worked in financial institutions for more than 30 years.  In 1998 he was hired as a loan officer for Global Credit Union ("GCU").  A year later he was promoted to the position of Branch Manager for GCU's Coeur d'Alene, Idaho branch.  In 2006, Defendant became the Vice President of Real Estate Lending/Idaho operations.  In 2009, GCU made some changes due to the economy, and Defendant's position as Vice President was closed.  Defendant was initially placed under a Ms. Kim Shill, who became the Operations Branch Vice President for GCU's branch offices in Idaho.  However, in August of 2010, Defendant was terminated due to a reduction in force.

According to an FBI interview of Ms. Shill on May 14, 2012, GCU was first notified of potential issues with loans Defendant had made when GCU received a repurchase request from Citibank.  GCU had approved a mortgage loan to an individual named John Wikum in 2007, which was in turn "sold" to Citibank.  In 2011, Citibank requested that GCU repurchase the loan because Mr. Wikum's reported income in his loan application did not match the income stated on his tax returns.  While researching the loan, Ms. Shill met with another GCU employee, who stated Mr. Wikum was Defendant's uncle. This information concerned Ms. Shill because GCU policy forbids employees from approving any loans to family members.  Other "family loan" files were

reviewed, and Ms. Shill relayed the information to GCU's Chief Executive Officer. Once Defendant's loan files were collected, they were submitted to GCU's bonding company, CUMIS Insurance Society. CUMIS required GCU to complete an internal audit and GCU hired Moss Adams.

Following the audit, Defendant was eventually charged, on June 17, 2014, in a nine-count indictment with one count of bank fraud, four counts of willful misapplication of funds, and four counts of false entry in books and records of a financial institution. (Dkt. 1.) On July 8, 2014, Defendant made his initial appearance, was appointed counsel and was arraigned. (Dkts. 4-8.) Defendant thereafter filed two motions to continue. (Dkts. 9, 12.) On April 22, 2015, Defendant filed six of the seven pre-trial motions addressed in this Order. (Dkts. 21-26.) Defendant filed the seventh pre-trial motion addressed in this Order on May 4, 2015. (Dkt. 32.) On May 19, 2015, the Government filed a Superseding Indictment. (Dkt. 54.)

The Superseding Indictment charges Defendant with the same offenses, but alleges each execution of bank fraud as a separate count. Counts 1-9 of the Superseding Indictment are thus for bank fraud involving false entries Defendant allegedly made on different loan and credit applications between April 9, 2007 and June 15, 2009. Counts 10-17 of the Superseding Indictment charge Defendant with four counts of willful misapplication in violation of 18 U.S.C. § 657 and four counts of false entry in violation of 18 U.S.C. § 1006. Trial is set for September 15, 2015.

**Standard of Law**

Trial judges are afforded wide discretion in determining whether evidence is relevant.  *United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004) (citing *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983)).  Because an in limine order precluding the admission of evidence or testimony is an evidentiary ruling, a district court has discretion in ruling on a motion in limine.  *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991) (citing *United States v. Komisaruk*, 885 F.2d 490, 492 (9th Cir. 1989)).

In limine rulings are provisional.  Such "rulings are not binding on the trial judge [who] may always change his mind during the course of trial."  *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984) (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).  "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded*."  Indiana Ins. Co. v. General Elec. Co*., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004).

**1.  Motion to Strike Surplusage (Dkt. 21)**

Pursuant to Federal Rule of Criminal Procedure 7(d), Defendant seeks to strike all surplusage in the Indictment that refers to Defendant's alleged breach of GCU's policy

and procedures by loaning money to family members.[1]  "The purpose of a motion to strike under Fed. R. Crim. P. 7(d) is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988).

Defendant argues breach of a lending company's policy and procedures is not illegal and is not an element of any of the charged offenses.  As such, Defendant maintains allegations regarding Defendant's breach of company policy are not necessary to the indictment.  *See United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986) (If "the language of the indictment goes beyond alleging elements of the crime, it is mere surplusage that need not be proved.")  Defendant suggests reference to violation of GCU's policy is not only irrelevant, but is also prejudicial because it could give the jury an unflattering view of Defendant as former Vice President of GCU.  The Government counters that Defendant's violation of GCU's policies and procedures demonstrates his intent to defraud the institution, an essential element of bank fraud, willful misapplication and false entry.  The Government suggests Defendant's intent to defraud is demonstrated by Defendant's repeated decision to put his interests, and the interests of his family, before those of GCU.

---

[1] The Superseding Indictment also refers to Defendant's alleged violation of GCU's policy regarding lending to family throughout its seventeen counts.  The Court accordingly assumes Defendant seeks to strike as surplusage any reference to violation of GCU's policy regarding lending to family from the Superseding Indictment.

The Defendant's request to strike surplusage from the Indictment is moot because neither the Indictment nor the Superseding Indictment will be read to the jury during the trial nor given to the jury during deliberations. The jury cannot be biased by information it will not see.  However, Defendant also asks that the Court "order that the government is prohibited from referencing any of [GCU's] policies or procedures as it relates to prohibitions of making loans to friends or family, either in its opening at trial, case-in-chief or during rebuttal."  (Dkt. 21-1, p. 11.)  The Court denies this request because Defendant's violation of GCU's policies is potentially material and relevant to each of the crimes charged.  *Terrigno*, 838 F.2d at 373.  Specifically, the Government must establish Defendant acted with intent to defraud GCU in order to prove Defendant committed bank fraud, willful misapplication and false entry.  To prove Defendant's intent, the Government may seek to present to the jury what policies and procedures GCU had in place to protect depositors' funds.  That Defendant allegedly frequently violated such policies and procedures for the benefit of himself and his family illustrates his intent to defraud GCU.  Facts regarding Defendant's violation of GCU's policies, though somewhat prejudicial, appear to be relevant and material to the charges at issue, and may therefore be admissible.  *Id.*  The Court will rule upon the admissibility of this evidence when it is offered at trial.

## 2.  Motion to Disclose Federal Rule of Evidence 404(b) & 609 Material (Dkt. 22)

Pursuant to Federal Rule of Evidence 404(b), Defendant requests advance notice of what crimes, wrongs or other acts, if any, the Government intends to introduce at trial.

6

Defendant also seeks, pursuant to Federal Rule of Evidence 609, evidence of what prior convictions, if any, the Government seeks to introduce at trial.  The Government subsequently provided notice of the Rule 404(b) and Rule 609 material it may introduce at trial.  (Dkts. 35, 37.)  Defendant's Motion to Disclose is moot.

### 3.  Motion in Limine Regarding Prior Conviction (Dkt. 23)

Defendant seeks to exclude evidence of his 1997 conviction for making false statements on a loan application.  The Government has provided notice that it will not attempt to introduce evidence of Defendant's 1997 conviction in its case-in-chief, but may question Defendant or witnesses about the conviction if the defense opens the door to such questioning.  (Dkts. 35, 37.)  As such, the Government asks that the Court reserve ruling on Defendant's Motion in Limine until this issue becomes ripe at trial.

Federal Rule of Evidence 609 governs the use of convictions as evidence of truthfulness for impeachment purposes.  Under Federal Rule of Evidence 609(a), evidence of prior convictions is admissible only if the probative value of the evidence outweighs its prejudicial effect to the defendant.[2]  The Ninth Circuit has outlined five

---

[2] Under Rule 609(a)(2), evidence of a prior conviction must be admitted if the court can readily determine "that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed.R.Evid. 609(a)(2).  As Defendant's prior crime involved deceit, the Court ordinarily would not have discretion to exclude the conviction under Rule 609(a)(1).  However, because Defendant's conviction is more than 10 years old, evidence of the conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed.R.Evid. 609(b)(2); *see also United States v. Bay*, 762 F.2d 1314, 1318 (9th Cir. 1984) ("Evidence of a conviction for forgery, which is a crime involving dishonesty…is mandatorily admissible for (Continued)

factors a court must consider when deciding whether to admit evidence under Rule 609(a)(1):

   1.  the impeachment value of the prior crime;

   2.  the point in time of the conviction and the witness' subsequent history;

   3.  the similarity between the past crime and the charged crime;

   4.  the importance of the defendant's testimony; and

   5.  the centrality of the credibility issue.[3]

*Cook*, 608 F.2d 1175, 1185 n. 8 (9th Cir. 1979) (en banc), *overruled on other grounds by Luce v. United States*, 469 U.S. 38 (1984); *see also United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000).

As Defendant notes, three of the five *Cook* factors weigh in favor of excluding his prior conviction. First, Defendant's prior conviction occurred nearly eighteen years ago, and Defendant has not had any other convictions since 1997. The remoteness of Defendant's prior weighs in favor of exclusion. Second, there is a heightened prejudice risk due to the similarity between Defendant's prior conviction for making false statements on a loan application and the current charges. The Ninth Circuit has held where a prior conviction "is sufficiently similar to the crime charged, there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on

---

impeachment purposes. Evidence of a conviction more than ten years old is presumptively inadmissible as too remote.") (citations omitted).

   [3] Hereinafter referred to as the "*Cook* factors."

the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again."  *United States v. Bagley*, 772 F.2d 482, 488 (9th Cir. 1985).  And third, Defendant's testimony will likely be important to challenge the Government's case.  Specifically, to find Defendant guilty of bank fraud, willful misapplication, and false entry, the jury will need to find Defendant had the requisite knowledge and specific intent to commit such crimes.  Defendant intends to testify to refute the willfulness requirement of the counts against him. (Dkt. 23-1, p. 7.)

Defendant admits that the other two *Cook* factors, the impeachment value of the prior crime and the credibility at issue, weigh in favor of admitting his prior conviction. (*Id*., pp. 5, 7.) The impeachment value of Defendant's prior conviction is significant since his prior reflects adversely on Defendant's honesty and integrity.  *United States v. Oaxaca*, 569 F.2d 518, 527 (9th Cir. 1978).  Defendant's credibility may also be a central issue in this case, as Defendant maintains his innocence and intends to challenge the Government's case against him by testifying.  (Dkts. 4, 23-1.)  "When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue."  *United States v. Alexander*, 48 F.3d 1477, 1489 (9th Cir. 1995) (citations omitted).

Because two of the *Cook* factors weigh significantly in favor of admitting Defendant's prior conviction, while the other three weigh against admission, this case could be considered a close call under Rule 609(a)(1).  Where the admissibility question is a close one, "the court should err on the side of excluding the conviction, with a

warning to the defendant that any misrepresentation of his background on the stand will

lead to admission of the conviction for impeachment purposes." *Cook*, 608 F.2d at 1187.

However, Rule 609(b) provides a more stringent and exacting balancing test for

admitting a prior felony than Rule 609(a)(1). *United States v. Portillo*, 699 F.2d 461, 464

(9th Cir. 1982). Rule 609(b) provides if more than 10 years have passed since the

witness's conviction or release from confinement for it, whichever is later, evidence of

the conviction is admissible only if:

> (1) its probative value, supported by specific facts and circumstances,
>     *substantially outweighs* its prejudicial effect; and
> (2) the proponent gives an adverse party reasonable written notice of the intent to
>     use it so that the party has a fair opportunity to contest its use.

FRE 609(b) (emphasis added).

Evidence of a conviction more than ten years old "is presumptively inadmissible

as too remote." *United States v. Bay*, 762 F.2d 1314, 1317 (9th Cir. 1985). The Advisory

Committee Notes to Rule 609(b) provide:

> It is intended that convictions over 10 years old will be admitted *very rarely and
> only in exceptional circumstances.* The rules provide that the decision be
> supported by specific facts and circumstances thus requiring the court to make
> specific findings on the record as to the particular facts and circumstances it has
> considered in determining that the probative value of conviction substantially
> outweighs the prejudicial effect.

Fed.R.Evid. 609(b)(1)(emphasis added).

Moreover, the Government has the burden of persuasion regarding admissibility of

a prior conviction. *United States v. Hendershot*, 614 F.2d 648, 653 (9th Cir. 1980).

Although the Government here requests that the Court reserve ruling and allow its

counsel to be heard on admissibility during trial if the issue becomes ripe, the

Government has not offered any argument to suggest the presumption against

admissibility should change in this case, and has not even attempted to meet its burden to

establish the probative value of Defendant's prior conviction will outweigh the prejudice

Defendant will suffer if it is admitted.  Although the Government would likely contend

such showing is premature since it has stated it will not introduce Defendant's prior

conviction unless he opens the door to such evidence while on the stand, Defendant may

change his trial strategy, and choose to remain silent to avoid the prejudice associated

with the potential admission of his prior conviction, if the Court were to reserve ruling on

admissibility as the Government requests.  As the Ninth Circuit explained in *Cook*,

> [A]dvance planning helps both parties and the court.  Trial by ambush may
> produce good anecdotes for lawyers to exchange at bar conventions, but tends to
> be counterproductive in terms of judicial economy.  Other courts considering the
> problem have recommended a provisional ruling in advance of proposed
> testimony, with the judge free to meet any deception by modifying the ruling.

*Cook*, 608 F.2d at 1186.

The Court thus grants Defendant's Motion in Limine and will exclude Defendant's

prior conviction from admission at trial.  However, if Defendant misrepresents his

background during his testimony, the Court reserves the right to reverse its ruling to

allow admission of Defendant's prior conviction for impeachment purposes.  *Id*. at 1187.

### 4.    Motion to Dismiss Count One (Dkt. 24)

On April 22, 2015, Defendant moved to dismiss Count One of the Indictment

based on the failure to allege all essential elements and for ambiguous and duplicitous

charging.  Defendant challenged the Government's failure to allege that Defendant

knowingly executed or attempted to execute a scheme or artifice as required for the

offense of bank fraud.  Defendant also contested Count One as ambiguous and duplicitous because it included multiple acts occurring between April 9, 2007 and June 15, 2009.

On May 19, 2015, the Government filed a Superseding Indictment.  (Dkt. 54.) The Superseding Indictment separates each of the nine alleged executions of bank fraud into  a separate count, and also adds a "knowledge" element to each of the nine counts. Having reviewed the Superseding Indictment, the Court concludes Defendant's Motion to Dismiss Count One is moot.

**5**.      **Motion to Compel Grand Jury Transcripts (Dkt. 25)**

On April 22, 2015, Defendant moved the Court to order the Government to prepare and produce the grand jury testimony of the Government's witnesses. On May 6, 2015, the Government agreed to provide the grand jury transcript and stated it anticipated the transcript would be made available to Defendant within two weeks of the then-scheduled trial date of June 2, 2015.  Trial was subsequently continued to September 15, 2014.  (Dkt. 53.)  The Court accordingly grants Defendant's Motion to Compel and directs the Government to produce the grand jury transcript by August 3, 2015.  This should provide the Government plenty of time to secure and produce the transcript while also allowing Defendant adequate time to review the transcript and prepare for trial.

**6.      Motion to Sever (Dkt. 26)[4]**

---

[4] Defendant moved to sever before the Superseding Indictment was filed.  As mentioned, the Superseding Indictment involves the same loans, individuals and actions by Defendant, but separates the nine alleged acts of bank fraud originally included in one (Continued)

Defendant moves to sever his bank fraud charge from his willful misapplication and false entry charges.  Defendant also seeks to sever two counts of alleged willful misapplication and false entry occurring on April 30, 2007 and December 24, 2007, from two counts of alleged willful misapplication and false entry occurring on January 30, 2008 and February 9, 2009.   Pursuant to Federal Rule of Criminal Procedure 8(a), Defendant claims severance is appropriate because the aforementioned charges were improperly joined in the Indictment.  Defendant argues the charges were improperly joined because they arise from different acts, have different elements, and because the crimes have little to no commonality.  Defendant also argues severance of counts is proper under Federal Rule of Criminal Procedure 14 because trial of all counts together would be improperly prejudicial.

Rule 8(a) provides an indictment may charge a defendant in separate counts with two or more offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.Proc.R. 8(a).  The term "transaction" is interpreted flexibly and "'may comprehend a series of related occurrences'" *United*

---

count in the Indictment into nine separate counts.  The Court will accordingly refer to the Superseding Indictment when addressing the Motion to Sever, and assumes Defendant seeks to sever the bank fraud counts, Counts 1-9 of the Superseding Indictment, from the willful misapplication and false entry counts, Counts 10-17 of the Superseding Indictment.  Defendant also moved to sever Counts 2, 3, 4 and 5 of the Indictment from counts 6, 7, 8 and 9.  The Court thus assumes Defendant seeks to sever the corresponding counts in the Superseding Indictment, or counts 10, 11, 12 and 13 from counts 14, 15, 16 and 17.

*States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990) (quoting *United States v. Kinslow*, 860

F.2d 963, 966 (9th Cir. 1988)).

    If the criteria for joinder is not met on the face of the indictment, misjoinder

results and a trial judge must grant a motion to sever under Rule 8.[5]  *Id*.  In addition, even

if Rule 8 is satisfied and joinder is proper, Rule 14 allows the Court, in its discretion, to

order separate trials of counts if the joinder of offenses in the indictment appears to

prejudice a defendant.  Fed.R.Crim.Proc. 14(a).  However, the Ninth Circuit has stated

joinder "is the rule rather than the exception and…the burden is on the defendant in his

appeal following denial of the motion to sever to show that joinder was so manifestly

prejudicial that it outweighed the dominant concern with judicial economy and compelled

exercise of the court's discretion to sever."  *United States v. Armstrong*, 621 F.2d 951,

953 (9th Cir. 1980) (citation omitted).

    Defendant maintains the bank fraud charges should be severed from the false entry

and willful misapplication charges under Rule 8 because the charges arise from different

acts, have different elements, and because the crimes have little to no commonality.

Defendant argues severance is appropriate because the bank fraud allegations involve

three separate individuals, and include separate loans made to the three individuals on

different dates between 2007-2009.  Defendant also suggests the charges should be tried

separately because the crimes of willful misapplication and false entry have different

---

[5] "Because Rule 8 addresses the propriety of joining offenses in the indictment, the validity of joinder is determined solely by the allegations in the indictment."  *Id*. (citing *Schaffer v. United States*, 362 U.S. 511 (1960)).

elements than the crime of bank fraud, and because such charges involve additional individuals than those referenced in the bank fraud allegations.

As the Government points out, the victim for each of the counts charged is GCU, Defendant's employer. Each charge also involves Defendant's improper lending of GCU's funds through his role as an employee of GCU. The Indictment(s) suggests the offenses are of a similar character (providing false information on loan applications) and involve Defendant's common scheme to defraud his employer through lending funds to friends and family members who did not qualify for such loans. Further, the evidence necessary to prove the different counts will likely overlap, and the same witnesses, such as officers of GCU, will likely testify to establish Defendant criminally misapplied GCU's funds. As such, there is sufficient commonality between Counts 1-9 and 10-17 to establish joinder is proper. *Terry*, 911 F.2d at 276; *United States v. Portac Inc.*, 869 F.2d 1288, 1294 (9th Cir. 1989) ("Joinder is proper when the same facts must be adduced to prove each of the joined offenses."); *United States v. Montes-Cardenas*, 746 F.2d 771, 776 (11th Cir. 1984) ("Two crimes are 'connected' together if the proof of one crime constitutes a substantial portion of the proof of another.").

Defendant also requests the Court utilize its discretion under Rule 14 to sever the bank fraud count(s) from the willful misapplication and false entry charges, and sever the various instances of willful misapplication and false entry involving different individuals, because evidence of Defendant's bank fraud is inadmissible as "prior bad acts," depending on the count, involving another loan, a different individual, and a different time. Defendant argues grouping all counts will "simply have a snowball effect on the

15

jury," resulting in unfair and inadmissible prejudice to the Defendant under Federal Rules of Evidence 403 and 404.  (Dkt. 26-1, p. 9.)  Although the Court appreciates Defendant's concern, it is confident the jury will be able to assess and weigh the evidence with respect to each count, and render an appropriate verdict.  To ensure the jury is not prejudiced by hearing the evidence in one trial, the Court will instruct the jury that "a separate crime is charged against the defendant in each count.  You must decide each count separately. Your verdict on one count should not control your verdict on any other count."  Ninth Circuit Manual of Model Jury Instructions, 3.11 (2010).  Finally, the Court finds the purported prejudice Defendant may suffer as a result of denying severance does not outweigh the significant concern with judicial economy ordering three separate trials, as Defendant requests, would engender.  The Court accordingly denies Defendant's Motion to Sever.

       7.     **Motion for Federal Rule of Criminal Procedure 17(c) Subpoena Duces Tecum (Dkt. 32)**

Defendant requests a subpoena duces tecum to obtain GCU bank records not produced in discovery by the Government.  Specifically, Defendant seeks to inspect the original loan files referenced in the Indictment(s) in order to determine who at GCU "touched" the files when processing and shipping loans to other departments or to secondary market buyers.  (Dkt. 32-1, p. 5.)  Defendant accordingly requests the index of the name of each GCU employee that "touched" each of the relevant loan files, and the date such files were touched.  (*Id*.)  Defendant also seeks identification of what entity or "investor" each of the loans was sold to on the secondary market, or notice of whether the

loans were kept by GCU.  Finally, Defendant desires access to the Master Contract(s) between GCU and the secondary investors for the relevant loans in order to review the parameters of the loan acceptance by the secondary investor.  Defendant submits that his request to review the aforementioned information is relevant, admissible and specific, and thus satisfies Federal Rule of Criminal Procedure 17(c).  *United States v. Reed*, 726 F.2d 570 (9th Cir. 1984) ("Federal Rule of Criminal Procedure 17(c) requires a showing of relevancy, admissibility, and specificity to support the issuance of a subpoena duces tecum.").  The Government does not object to Defendant's review of the original loan files, but suggests requiring GCU to relinquish control over their original files would cause a substantial hardship for GCU.

The Court finds the original loan files and supporting documents are relevant, admissible and specific.  First, Defendant seeks to review the original individual loan files referenced in the Indictment(s).  Although the Government has produced the loan files in discovery, Defendant submits the files, as copied by GCU and provided to the Government, are incomplete, as to who at GCU "touched" the files when processing and shipping the loans to other departments, or, in some circumstances, to secondary market buyers.  Defendant is entitled to review the complete loan files in order to prepare his defense to the Government's claim he fraudulently approved such loans.  The complete loan files are relevant to all seventeen counts charged in the Superseding Indictment.

Second, Defendant specifically identifies the loan files for the nine GCU loans referenced in the Indictment(s).  The specific loan files Defendant seeks include:

Count One: April 9, 2007 GCU Global Credit Union Visa Gold Card application for J.W.;

Count Two: April 30, 2007 GCU loan application for J.O.W.;

Count Three: May 21, 2007 GCU Global Credit Union Visa Gold Credit Card application for B.W.;

Count Four: December 24, 2007 GCU loan application for J.O.W.;

Count Five: January 30, 2008 car loan application for B.W.;

Count Six: January 29, 2009 GCU Global Credit Union Visa Gold Credit Card application for B.W.;

Count Seven: February 9, 2009 GCU loan application for J.W.;

Count Eight: March 3, 2009 GCU Global Credit Union Visa Gold Credit Card application for N.W.;

Count Nine: June 15, 2009 GCU loan application for B.W.

(Dkt. 54, pp. 3-6.)

Finally, the bank records in question may be admissible under Federal Rule of Evidence 803(6) as bank records that should have been maintained in the regular course of business, and under Federal Rule of Evidence 803(14) and (15) as records and statements in documents that affect an interest in property. The Court accordingly grants Defendant's Motion for Fed. R. Crim. Proc. 17(c) Subpoena Duces Tecum. However, the Court orders GCU to make such files available for Defendant and/or his counsel to physically inspect and/or copy, but will not require GCU to relinquish control over the files.

18

**Conclusion**

In preparing this Order, the Court has endeavored to provide the parties as much guidance as possible regarding the Court's understanding of the law that applies to this case and the evidence as the parties have represented they intend to rely upon at trial.  In doing so, the Court has entered rulings where it can.  However, for the most part, the determination as to the admissibility of particular items of evidence will have to be made during the course of the trial when the Court is able to view the evidence in the context in which it is being offered.  That being the case, the rulings made in this Order are preliminary.  If the evidence presented at trial differs, the Court reserves the right to rule on the admissibility of the evidence accordingly at trial.  The parties are directed to notify the Court in advance of any evidentiary issues being raised so that the Court can take up such matters outside of the presence of the jury and to eliminate any undue delay during the trial.

**ORDER**

**IT IS ORDERED:**

The Court issues this Order as its tentative ruling on Defendant's pre-trial motions:

1.  Defendant's Motion to Strike Surplusage (Dkt. 21) is **DENIED**;

2.  Defendant's Motion to Disclose Federal Rule of Evidence 404(b) and 609 Material (Dkt. 22) is **MOOT**;

3.  Defendant's Motion in Limine (Dkt. 23) is **GRANTED**;

4.  Defendant's Motion to Dismiss (Dkt. 24) is **MOOT**;

5.   Defendant's Motion to Compel Grand Jury Transcripts (Dkt. 25) is

**GRANTED**.  The Government shall provide Defendant with the grand jury

transcript on or before August 3, 2015;

6.   Defendant's Motion to Sever (Dkt. 26) is **DENIED**;

7.   Defendant's Motion for a Fed. R. Crim. P. 17(c) Subpoena Duces Tecum (Dkt.

32) is **GRANTED**. The Court directs Defendant to serve his Rule 17(c)

subpoena duces tecum on GCU, along with a copy of this Order.  GCU will

have ten (10) days from the date it is served with the subpoena to schedule a

time and place for Defendant and/or his counsel to inspect the original loan

files for the loans referenced in the Superseding Indictment.  GCU is not

required to relinquish control of the original loan files, but shall allow

Defendant to make copies.

**SO ORDERED**.

DATED: June 29, 2015

Edward J. Lodge
United States District Judge